Adam P. Segal, Esq.
Nevada Bar No. 6120
Bryce C. Loveland
Nevada Bar No. 10132
Christopher M. Humes, Esq.
Nevada Bar No. 12782
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614
Telephone:  (702) 382-2101
Facsimile:   (702) 382-8135
Email: asegal@bhfs.com
Email: bcloveland@bhfs.com
Email: chumes@bhfs.com

*Attorneys for Defendant Nevada Resort Association - IATSE Retirement Local 720 Pension Plan*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JB VIVA VEGAS, L.P.,<br><br>Plaintiff,<br><br>vs.<br><br>NEVADA RESORT ASSOCIATION - IATSE RETIREMENT LOCAL 720 PENSION PLAN,<br><br>Defendant. | CASE NO.:  2:16-cv-01130-APG-NJK<br><br>**REPLY IN  SUPPORT OF MOTION TO DISMISS** |

Defendant Nevada Resort Association - IATSE Retirement Local 720 Pension Plan ("Trust Fund") files this Reply ("Reply") in support of its Motion to Dismiss (the "Motion"). This Reply is based on 29 U.S.C. § 1401, the points and authorities below and the complete file on record with the Court.

## POINTS AND AUTHORITIES

Buried within its colorful hyperbole, JB Viva Vegas, L.P. ("JB") argues four, unavailing points in its Opposition to the Trust Fund's Motion to Dismiss ("Opposition" or "Opp."). JB contends that (1) MPPAA's catchall jurisdiction section is controlling; (2) the Trust Fund never made a determination as contemplated by 29 U.S.C. § 1401; (3) if the Trust Fund did make a

1

determination, it did not pertain to a withdrawal liability calculation; and (4) MPPAA's arbitration timing requirements are conclusive proof that dismissal is unwarranted.

All of JB's arguments fail. As shown below, MPPAA's catchall jurisdictional clause is just that, a catchall. The mandatory arbitration clause acts as an exhaustion of remedies requirement and works within the confines of the Court's jurisdiction. The Trust Fund did make a determination regarding what constitutes a "group" or a "class" and JB's argument requires a fact-based inquiry reserved for arbitration. Moreover, JB admits that it is seeking resolution of this dispute to obtain a withdrawal liability determination, undercutting its own arguments to the contrary.

Lastly, the arbitration requirement's timing rules are immaterial pursuant to the unambiguous statutory language. Despite JB's feigned ignorance, precedent exists supporting the Trust Fund's position. In fact, JB is uniquely aware of that precedent through its own counsel who represented the unsuccessful party in that case. Counsel's arguments failed then, and they fail again now.

The Trust Fund is confident the Court would find JB's arguments to be meritless and that the Trust Fund's Amendment No. 5 to its trust agreement (the "Amendment") is permissible under § 1383. This Court, however, is not the proper forum to make such a determination. As shown below, the Court should dismiss the complaint and require JB to exhaust its administrative remedies.

**I.   MPPAA's catchall jurisdictional clause does not eliminate the arbitration requirement.**

JB contends that the Trust Fund's request for arbitration is tantamount to ignoring the Court's jurisdiction conferred by 29 U.S.C. § 1451, MPPAA's catchall jurisdiction section. (Opp., at 16:7.) The opposite is true: JB ignores MPPAA's arbitration requirement by arguing for an overly broad interpretation of § 1451.

The Trust Fund does not dispute that § 1451 confers jurisdiction on this Court for disputes regarding MPPAA. 29 U.S.C. § 1451. Within MPPAA, though, is the requirement that "[a]ny dispute . . . under sections 1381 through 1399" must be arbitrated in the first instance. 29 U.S.C.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

§ 1401(a). "The arbitration clause constitutes an exhaustion of administrative remedies requirement." *Bd. of Trustees of Const. Laborers' Pension Trust for S. California v. M.M. Sundt Const. Co.*, 37 F.3d 1419, 1420 (9th Cir. 1994).

JB cites two cases for its misguided reading of § 1451. (Opp., at 12:8-20 (citing *Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund*, 425 F.3d 1087 (8th Cir. 2005) and *Peick v. Pension Ben. Guar. Corp.*, 724 F.2d 1247 (7th Cir. 1983)).) Both cases are inapplicable to the current facts.

In *Borntrager*, the arbitration requirement was not at issue. The question before the Eighth Circuit Court of Appeals was whether the Court lacked jurisdiction under 28 U.S.C. § 1291 to decide an appeal of an interlocutory order remanding a case to an ERISA plan administrator. *Borntrager*, 425 F.3d at 1092. In fact, the *Borntrager* Court contemplated the possibility that the district court may have to invoke the arbitration requirement. *Id.* at n.1 ("[I]f the expulsion was valid, the district court will need to decide whether such an expulsion triggers withdrawal liability under the MPPAA, an issue that may be subject to mandatory arbitration[.]")

*Peick* is also inapplicable as it involved a constitutional challenge of MPPAA's withdrawal liability statutes as a whole. *Peick*, 724 F.2d at 1262. As stated in the Trust Fund's Motion, courts permit an exception to MPPAA's mandatory arbitration requirement when a party brings a constitutional attack on a statute referenced in 29 U.S.C. § 1041. (Motion, at 3:16-20 (citing *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 165 (6th Cir. 1988); *Cent. States, Se. & Sw. Areas Pension Fund v. MGS Transp., Inc.*, 661 F. Supp. 54, 56 (N.D. Ill. 1987) ("arbitrators have no authority to interpret the Constitution")).)

Here, JB's dispute is not a constitutional challenge and this dispute wholly revolves around the Trust Fund's determination made under 29 U.S.C. § 1383 ("Section 1383" or "§ 1383"), clearly within the range of statutes that "*shall be resolved through arbitration.*" Compare 29 U.S.C. 1401(a) ("Any dispute . . . under sections 1381 through 1399"), *with* (Complaint, at 3 ¶ 9 (citing 29 U.S.C. § 1383), 3 ¶ 10 (same), 4 ¶ 11 (same), 5 ¶ 14 (same); 5 ¶ 17 (same), 6 ¶ 18 (using statutory language from 29 U.S.C. § 1383 without citation), 6 ¶ 19 (same), 6 ¶ 22 (citing 29 U.S.C. § 1383), 6 ¶ 23 (same), 10:6 (same).)

3

The Court has jurisdiction over these proceedings *after* all administrative measures are exhausted. This dispute arises under § 1383, so JB must exhaust administrative measures first, before proceeding in this forum. The Court should dismiss this action and require JB to proceed to arbitration as MPPAA requires.

**II.   JB's dispute involves a factual determination that must be arbitrated.**

JB asserts that it is not contesting a "determination," but its Complaint and Opposition demonstrate otherwise.

Disputes concerning a determination made under Sections 1381 through 1399 "are to be resolved through arbitration." *Bd. of Trustees of Const. Laborers' Pension Trust for S. California v. M.M. Sundt Const. Co.*, 37 F.3d 1419, 1420 (9th Cir. 1994); 29 U.S.C. § 1401. Although JB attempts to convince the Court that the word "determination" refers to a withdrawal liability assessment, "[s]ection 1401(a)(1) refers to 'disputes' concerning 'determinations' because the items in sections 1381 through 1399 are all *factual determinations* that the MPPAA entrusts to the discretion of the Fund." *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc.-Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 311-12 (3d Cir. 2004) (emphasis in original).

Although withdrawal liability estimates are permitted by 29 U.S.C. § 1021(l), they contain determinations of fact by requiring a plan to adhere to calculation methods and exceptions prescribed by statutes required to be arbitrated. *See* 29 U.S.C. § 1391 (methods for computing withdrawal liability); 29 U.S.C. § 1389 (the de minimus rule); 29 U.S.C. 1383(b) (construction industry exception), (c) (the "Entertainment Exception").

Disputes regarding issues of fact must be arbitrated. *ILGWU Nat. Ret. Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d 879, 886 (2d Cir. 1988). Analysis of a provision in a trust agreement is a question of contract interpretation, an issue of fact. *Bd. of Trustees of Watsonville Frozen Food Welfare Trust Fund v. California Co-op. Creamery*, 877 F.2d 1415, 1420 (9th Cir. 1989). Contract interpretation is an issue that "courts have determined should be subject to arbitration." *Caesars Entm't Corp. v. Pension Plan of Nat. Ret. Fund*, No. 15-CV-138 LAK JLC, 2015 WL 7254208, at *4 (S.D.N.Y. Nov. 17, 2015) (citing *ILGWU,* 846 F.2d at 886; *T.I.M.E.-DC, Inc. v.*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

4

*Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Longshoremen's Ass'n.,* 756 F.2d 939, 945 (2d Cir. 1985)); *see T.I.M.E.-DC, Inc. v. Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 945 (2d Cir. 1985) (stating "there are no . . . issues of contract interpretation to resolve" as support to not remand to arbitration).

JB's dissatisfaction with its withdrawal liability estimate is the impetus of this matter. (Opp., at n.3.) JB disagreed with the Trust Fund's determination of facts contained in the estimate. It now seeks to target the Amendment's validity so it can benefit from the Entertainment Exception. (*See*, *generally,* Complaint.)

Section 1383(c)(4) states that "A plan may be amended to provide that [the Entertainment Exception] shall not apply to a group or class of employers under the plan." JB relies on this statute as the crux of its argument against the Amendment's invalidity. (Complaint, at 5 ¶ 17 ("29 U.S.C. § 1383(c)(4) . . . only permits the Plan to eliminate the rule's application to a "group" or "class" of employers.").) JB acknowledges that the very authority that permits the Trust Fund to enact the challenged Amendment is contained in the range of statutes expressly reserved for arbitration.

Moreover, JB's argument, flawed as it may be, is that the Amendment is invalid because "virtually all contributing employers to the Plan are either a top ten (10) contributing employer to the Plan, are employers that have made contributions to the Plan more than 12 months after they first made contributions to the Plan, or are both." (*Id.* at 5 ¶ 15.)

This is not an argument of statutory interpretation, but a counting exercise. Numbers are facts. JB's allegations, when taken as true, require analysis of the Trust Fund's *factual determination* of whether or not the group identified in the Amendment comprises all of the contributing employers.

JB's dispute also only pertains to § 1383's application to the Trust Fund's trust agreement. JB's entire argument is premised solely on contract interpretation, a clear question of fact that must be arbitrated.

The Trust Fund made multiple determinations, and JB brings fact-based arguments that the determinations are improper. JB's allegations fit squarely into the type of dispute that must be

5

arbitrated.

### III. The Trust Fund's determination involves the calculation of withdrawal liability.

JB also asserts that the Motion should be denied because the Amendment does not affect the calculation of withdrawal liability. (Opp., at 13:6-9) (citing *T.I.M.E.-DC, Inc. v. Mgmt.-Labor Welfare & Pension Funds, of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 945 (2d Cir. 1985) (factual issues regarding calculation of withdrawal liability must be arbitrated); *Carl Colteryahn Dairy, Inc. v. Western Pennsylvania Teamsters & Employers Pension Fund*, 847 F.2d 113, 118-19 (3d Cir. 1988).)[1]

In the same breath, however, JB requests a ruling regarding the Amendment's validity because it affects the calculation of JB's withdrawal liability. (Opp., at 7:4-10.) JB's arguments are inapposite. It is JB's fear that if the Amendment is valid, JB will owe over $250,000 once it withdraws. (*Id.* at n.3.) JB alleges that if the Amendment is not valid, Section 1383's Entertainment Exception will apply and JB will owe nothing. (*Id.* at 7:25-8:4.) JB asserts fact-based allegations that require resolution necessary to calculate withdrawal liability. As such, this dispute is required to proceed to arbitration.

### IV. The arbitration timing requirements are immaterial.

JB argues that the timing requirements of filing arbitration are conclusive proof that arbitration is not required. The timing requirements do not change the first sentence of 29 U.S.C. § 1401, that "[a]ny dispute . . . concerning a determination made under sections 1381 through 1399 of this title *shall be resolved through arbitration*[.]" (emphasis added). As shown above, this dispute regarding § 1383 requires arbitration.

---

[1] JB's cited support is unhelpful to its arguments. *T.I.M.E.-DC, Inc.*, addresses the transfer of assets pursuant to 29 U.S.C. § 1415, while *Colteryahn* examines a common law claim relating to withdrawal liability, both outside the arbitration requirement's statutory range. *T.I.M.E.-DC, Inc.*, 756 F.2d at 945 ("The issue here involves the interaction of § 1415 with the withdrawal liability provisions and, as such, is outside the scope of those issues that Congress directed to the arbitrator"); *Colteryahn*, 847 F.2d at 119 ("not one of the statutory provisions even arguably implicated by Colteryahn's fraud claim falls within sections 1381–1399"). This case addresses factual determinations made under § 1383, and therefore must be arbitrated.

020038\0002\14875014.1

Prior precedent and public policy support that whether or not JB can institute proceedings at the current time is immaterial; arbitration is still required.

### A. Prior precedent demonstrates that this matter can be arbitrated without a withdrawal liability assessment.

JB asserts that the Trust Fund fails to cite any case where a court invoked the mandatory arbitration provision when no withdrawal occurred and no withdrawal liability assessment had been issued. JB is mistaken. The Trust Fund cited to *Caesars Entm't Corp. v. Pension Plan of Nat. Ret. Fund*, No. 15-CV-138 LAK JLC, 2015 WL 7254208 (S.D.N.Y. Nov. 17, 2015). (Motion, at 4:12-14.)

JB's oversight of *Caesars* is especially surprising given that *JB's counsel represented Caesars Entertainment Corporation in that action!*[2] Despite its assertion that "no such case exists" requiring arbitration before withdrawal, JB is well aware a court has found to the contrary. (Opp., at 15:2.) Indeed, in *Caesars*, JB's counsel brought many of the same flawed arguments as it does here. *Compare Caesars*, No. 15-CV-138 LAK JLC (S.D.N.Y. Dec. 1, 2015), at Objection to Report and Recommendations (ECF No. 34, filed Dec. 1, 2015), at 3-4 (timing requirements proves arbitration is not required), 6-7 (a determination was not made), 10 (calculation of withdrawal liability is not at issue), *with* Opp., at 15:13-25 (timing requirements proves arbitration is not required), 13:2-3 (a determination was not made), 13:24-25 (calculation of withdrawal liability is not at issue). The court found these arguments to be unsuccessful in *Caesars* and there's no reason for the Court to find differently here. *Caesars*, No. 15-CV-138 LAK JLC (S.D.N.Y. Dec. 1, 2015), at Order Adopting Report and Recommendation (ECF No. 36, filed Dec. 25, 2015).

*Caesars* was very similar to this case: no withdrawal had occurred; a withdrawal liability assessment hadn't been served; the pension fund's trust agreement required interpretation; and the dispute focused on a statute within the range of statutes required to be arbitrated. *Caesars*, 2015 WL 7254208, at *1 and *4.

---

[2] Akin Gump Strauss Hauer & Feld LLP, specifically Lawrence Levien, Esq., Eric Field, Esq., and Elizabeth Cyr, Esq., represent both Caesars Entertainment Corp. and JB (pro hac vice application pending).

7

020038\0002\14875014.1

Based on these same facts, the *Caesars* Court held that the issue required arbitration because it was within the statutes referenced in § 1401 and the issue required contract interpretation, an issue of fact specifically reserved for arbitration. *Caesars*, 2015 WL 7254208, at *4.

The Court also noted that even if the issue was one of pure statutory interpretation, arbitration was required because the statutes in question were confined to the range referenced in § 1401. *Caesars*, 2015 WL 7254208, at *4.

This case is no different. JB's dispute focuses solely on the Trust Fund's trust agreement and the Trust Fund's determinations under § 1383. Contract interpretation and any statutory interpretation of a statute referenced in § 1401 is reserved for arbitration. JB and its counsel are well aware of this prior precedent, which clearly contradicts their arguments. The Court should rule as the *Caesars* Court did; this dispute requires arbitration.

**B.     If JB cannot initiate arbitration, this case is not ripe and must be dismissed.**

"ERISA unequivocally establishes a 'pay now, arbitrate later' scheme." *Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.,* 150 F.3d 868, 872 (7th Cir.1998). This is a "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

JB's arguments depend on the statutory framework within 29 U.S.C. § 1401(a)(1), which explains the timing requirements of arbitration initiation. When an arbitration may be commenced, however, does not change the language in the first sentence of the statute. "Any dispute . . . concerning a determination made under sections 1381 through 1399 of this title *shall be resolved through arbitration*." 29 U.S.C.A. § 1401 (emphasis added).

As shown above, the Trust Fund made a determination under § 1383. JB disputes the validity of that determination. These two facts end the analysis and *arbitration is required*. If JB's position is correct and arbitration is not permitted at this time (contrary to the *Caesars* Court's holding), then JB's claim is not ripe for a ruling. The case, therefore, must be dismissed on those grounds alone. Conversely, if arbitration is the required forum at this point in the procedure, as it was in *Caesars*, the case must also be dismissed for failure to exhaust administrative remedies.

8

JB attempts to support its argument by expressing a need for certainty. (Opp., at 7:2-10.) JB received a withdrawal liability estimate. (Opp., at n.3.) JB has the certainty it is afforded at this time. *See* 29 U.S.C. § 1021(l).

When and if JB is assessed withdrawal liability, it will have the opportunity to arbitrate this dispute, as mandated by MPPAA. JB's self-professed inability to initiate arbitration does not save its flawed argument. The Trust Fund made fact-based determinations and any dispute regarding those determinations must be arbitrated. If JB is not permitted to bring arbitration now, then it must wait, and this action must be dismissed as unripe.

### C.   Public policy supports requiring arbitration in this matter.

"[T]he value of arbitration in fulfilling Congress' intent to provide an efficient, expeditious dispute resolution mechanism lies in initial resort to that mechanism." *Teamsters Pension Trust Fund-Bd. of Trustees of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987).

An employer is permitted to request one estimate of withdrawal liability every twelve months. 29 U.S.C. § 1021(l). If the Court were to accept JB's logic, all employers could contradict Congressional intent and attempt to end run the MPPAA arbitration requirement by simply requesting an estimate and then disputing the same prior to withdrawing. Unsatisfied employers could challenge the calculation in federal court because no formal assessment had been produced. That is not what Congress intended when it enacted the arbitration statute.

Applying JB's logic, employers could eviscerate the "expeditious dispute resolution mechanism" that Congress purposefully created. The Court should not permit JB to trample the intent of the Legislature by bringing a challenge after receiving a withdrawal liability estimate claiming the timing requirements have not started. The Court should preserve Congressional intent by either ruling in line with the *Caesars* Court and directing this matter to arbitration, or declaring this matter dismissed for lack of ripeness because JB is required to receive a withdrawal liability assessment prior to challenging the method of calculation. Either option ends with the same result: dismissal of Plaintiff's Complaint.

**Conclusion.**

The Trust Fund made factual determinations under § 1383 and JB disputes those determinations. Pursuant to MPPAA, this case must be arbitrated. The Trust Fund therefore respectfully requests the Court dismiss this action due to JB's failure to exhaust administrative remedies.

Dated this 11th day of July, 2016.    BROWNSTEIN HYATT FARBER SCHRECK, LLP

  /s/ Christopher M. Humes
Adam P. Segal, Esq.
Nevada Bar No. 6120
Bryce C. Loveland, Esq.
Nevada Bar No. 10132
Christopher M. Humes, Esq.
Nevada Bar No. 12782
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106-4614

*Attorneys for Defendant Nevada Resort Association - IATSE Retirement Local 720 Pension Plan*

020038\0002\14875014.1

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that I am an employee of Brownstein Hyatt Farber Schreck, LLP and that on this 11th day of July, 2016, I served a true copy of the foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** upon:

Mark J. Ricciardi, Esq.
Fisher & Phillips LLP
300 S. Fourth Street, Suite 1500
Las Vegas, Nevada 89101

Attorneys for Plaintiff JB Viva Vegas, L.P.

☒ **BY CM/ECF System**

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Wendy Cosby
An Employee of Brownstein Hyatt Farber Schreck, LLP

020038\0002\14875014.1