UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JB VIVA VEGAS, L.P.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NEVADA RESORT ASSOCIATION-IATSE LOCAL 720 RETIREMENT PLAN,<br><br>　　　　　Defendant. | Case No. 2:16-cv-01130-APG-NJK<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 8) |

　　　Plaintiff JB Viva Vegas, L.P. (JB) sues defendant Nevada Resort Association-IATSE Local 720 Retirement Plan (the Plan) for a declaratory judgment that a recent amendment to the Trust Agreement governing the Plan violates ERISA. The Plan moves to dismiss the complaint on the grounds that ERISA mandates arbitration for this kind of dispute.

　　　JB's complaint does not fall within ERISA's mandatory arbitration provision, which governs challenges to withdrawal penalties assessed by pension plans to individual employers. Here, by contrast, JB makes a pre-assessment challenge that the plan amendment is impermissible under ERISA as to all employers participating in the plan. I therefore deny the motion to dismiss.

**I.　BACKGROUND**

　　　Until recently, JB operated a theatrical production of the musical "Jersey Boys" at Paris Hotel & Casino in Las Vegas, Nevada. ECF No. 1 at 3. It made monthly contributions to the Plan based on a collective bargaining agreement with IATSE Local 720 for work performed by stagehands it employed on the musical. *Id.* The Plan is a multi-employer pension plan primarily covering employees in theater and related entertainment industries. *Id.*

　　　Under ERISA, if an employer either partially or completely withdraws from an underfunded multi-employer pension plan to which that employer has been making

contributions, the employer is liable to the plan for its pro rata share of the plan's underfunding (referred to as "withdrawal liability"). *See* 29 U.S.C. § 1381.  Sections 1381 through 1399 detail when withdrawal liability is incurred and how multi-employer plans should calculate and assess it.  Section 1383(a) states that "complete withdrawal" occurs when an employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan."  Section 1383(c), however, offers an exception that makes it easier for employers in the entertainment industry (like JB) to avoid a withdrawal assessment.

This carve-out for the entertainment industry applies by default, but Section 1383(c)(4) says "[a] plan may be amended to provide that this subsection shall not apply to a group or class of employer under the plan."  Under this authority, the trustees of the Plan in this case adopted such an amendment.  JB's complaint challenges the amendment, contending that it bars nearly all employers from the 1383(c) exception and categorizes employers impermissibly.

ERISA provides a cause of action for an "employer . . . who is adversely affected by the act or omissions of any party under this subtitle with respect to a multi-employer plan," with jurisdiction in federal district courts. 29 U.S.C. § 1451(a), (c).  Section 1401, however, mandates arbitration for "[a]ny dispute between an employer and a plan sponsor of a multi-employer plan concerning a determination made under sections 1381 through 1399 of [ERISA] . . . ." 29 U.S.C. § 1401(a)(1).  The Plan bases its motion to dismiss on this arbitration provision.

## II.     ANALYSIS

The Plan reasons that the amendment JB challenges was authorized by Section 1383(c)(4) and will affect the application of Section 1383 to employers who participate in the Plan, so it is therefore a "dispute . . . concerning a determination" made under Section 1383.  JB responds that the word "determination" refers to a fact-specific penalty assessment against a particular employer, rather than a statutory challenge to a plan amendment.

The triggering mechanism for arbitration under Section 1401 suggests JB is correct. "Either party may initiate . . . arbitration . . . within a 60-day period after the earlier of (A) the date of notification to the employer under section 1399(b)(2)(B) . . . or (B) 120 days after the

date of the employer's request under section 1399(b)(2)(A) . . . ." 29 U.S.C. § 1401(a)(1). Section 1399(b) is entitled "Notification, demand for payment, and review upon complete or partial withdrawal by employer." It reads, "[a]s soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall—(A) notify the employer of—(i) the amount of the liability, and (ii) the schedule for liability payments, and (B) demand payment in accordance with the schedule." The logical inference is that Sections 1399 and 1401 are triggered only by an actual employer withdrawal and liability assessment. This inference that "determination" in Section 1401 signifies an individualized liability assessment is strengthened by language in 1399(b) allowing the employer to review documentation "relating to the determination of the employer's liability." 29 U.S.C. § 1399(b)(2)(A)(i).

The majority of the cases the Plan relies upon relate to challenges after an individualized withdrawal assessment, and thus fall squarely within the triggering provisions in Sections 1399 and 1401. *See, e.g.*, *ILGWU Nat. Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 886 (2d Cir. 1988). One case the Plan discusses in its reply is more nuanced. *See Caesars Entm't Corp. v. Pension Plan of Nat. Ret. Fund*, No. 15-CV-138 LAK JLC, 2015 WL 7254208 (S.D.N.Y. Nov. 17, 2015). In *Caesars*, the defendant plan sought to expel the plaintiff employer from the plan, thereby triggering an involuntary withdrawal and liability assessment. The court required the employer to arbitrate its challenge pursuant to Section 1401. *Id.* at *5. That case is distinguishable because it involved an individualized dispute over a withdrawal and penalty assessment, and thus is closer to the individualized "determination" contemplated by Section 1401. Indeed, the court framed the "primary question" for application of Section 1401 as "whether a complete withdrawal from the plan has occurred." *Id.* at *4. Here, by contrast, no withdrawal has occurred and JB challenges an amendment that affects all participating employers, rather than an individualized determination of JB's liability.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the Plan's motion to dismiss **(ECF No. 8) is DENIED**.

DATED this 28th day of February, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE